The next case this morning is 523-0571, People v. Merchant. Arguing for the appellant is Stephanie Glassberg. Arguing for the appellee is Pamela Wells. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, counsel. Good morning. Before we get to the arguments, I just want to double check. I'm looking here. The state filed a motion to cite additional authority, which we granted to cite the People v. Tamayo. So, the state was asking to be able to cite People v. Tamayo. That's 20-25 Illapse 2nd, 230-405-U. I guess I would ask Ms. Glassberg, are you prepared today to address that, or would you need maybe a little time to do any supplemental briefing on the issue? I am prepared to address it today, but I will let you know if supplemental briefing is needed if it goes beyond what I have prepared for today. Obviously, I would allow both sides if need be. I just wanted to make sure I got that taken care of before we got started. With all that in mind, Ms. Glassberg, go right ahead. Good morning, and may it please the court. I'm Stephanie Glassberg, and I represent the appellant, Mr. Carlton Merchant. I will be addressing the arguments on first-degree murder reduced to second-degree murder and the inadmissible 14 Snapchat videos, but I'm happy to answer questions from any of the arguments made in the brief. Mr. Merchant's first-degree murder conviction should be reduced to second-degree murder because Mr. Merchant proved by a preponderance of the evidence that he had a genuine fear that Terence Hicks was going to cause harm to himself and others, and it was necessary for him to defend himself when he shot at Hicks. Merchant had a sincere belief that he needed to defend himself against Hicks for three reasons. Merchant only got involved in the fight to protect his friend, who was outnumbered. He had no intention of being involved in an altercation that night. Merchant had Merchant was being threatened by someone he did not know in the middle of a very chaotic and rapidly escalating fight, and most importantly, Merchant's genuine fear was not challenged or contradicted by any of the evidence. Merchant was attempting to leave the downtown Alton area with his friend, Arion Vaughn, when Arion was involved in a street fight. Merchant had no interest in involving himself in the fight until Vaughn looked like he needed help. When Merchant followed Derek Cortland from the car to the street where the fight had broken out, there were at least four people opposite his friend, one of those being Gaiety Newsome, who was actively fighting with Vaughn. Then Merchant saw a person on the other side of the fight who he identified as Terence Hicks pick up a beer bottle and lunge towards Cortland. Cortland testified that he was in fear of his life. Merchant then pushed Hicks backwards to protect Cortland, and then Hicks lunged towards Merchant with the beer bottle in his hand. That is when Merchant testified that Hicks had a look in his eye like he wasn't going to stop, and Merchant took out his gun and shot once in Hicks' direction. Merchant's testimony about his sincere fear of Hicks was supported by the evidence. The state's witness, Derek Cortland, confirmed that Hicks was holding a beer bottle and threatening people in the group with it. In fact, none of the state's witnesses contested the fact that Hicks was holding a beer bottle. Additionally, the medical examiner's report supported the fact that Hicks could have been in a lunging position when he was shot based on the trajectory of the bullet passing through his body. The state believes that Kaitlyn Lindsay's testimony was pivotal in proving their case. However, nothing that Lindsay testified to contradicted Merchant's genuine fear that he needed to use force to defend himself and others. Lindsay never testified that Merchant and Hicks had no interaction. Lindsay only testified that she dissuaded Merchant from participating in the fight, and then she heard a gunshot. The surveillance footage taken from the Firehouse Bar, which captured part of the incident, also does not contradict Merchant's belief in self-defense, as Merchant was not even in the frame of the video and does not appear at any point in the recording. Additionally, by the trial court's own admission, the surveillance footage was grainy and at a distance, which made it difficult to discern exactly what was happening. Let me stop you there, kind of to that point. In this particular case, it was a bench trial, correct? Correct. So the trial court, the judge, basically must assess the credibility of all the testimony, all the witnesses, all the evidence. And given that the judge did say that it was a grainy video, the judge did assess the credibility of all the witnesses and made that fact finding that the defendant had not proven the elements for a second-degree murder, correct? Correct. And our standard of review, I believe, is an abuse of discretion on this issue, is that right? So I think what you're getting at is whether the panel can test the credibility findings of the trial court. And the argument that we're making is that you can take all the credibility findings that the trial court found, you can believe Lindsay's testimony, and you can believe what the judge found about the surveillance footage. You can take all of that and still find that the trial court made an error in their finding, that all of the evidence, including Lindsay's testimony, including the footage, does not contradict what Merchant said was a true and genuine fear that Hicks was going to harm him and others. Back to Justice Bowie's question, though, the standard of review is abuse of discretion, though, is that correct? The review in this case is a reasonable, beyond a reasonable doubt. That is the review in this case. And the abuse of discretion is the standard for- It's a sufficiency standard of review? Sufficiency, correct. That's very high burden for a defendant to get over, isn't it? That is correct. Yes. And like I said, taking everything, all the evidence, and like most favorable to the state, including Lindsay's testimony and the firehouse fire surveillance footage, this court can still find that Merchant had a reasonable belief in self-defense, that he, let me scratch that, that he had a genuine fear that he needed to defend himself. And although that reason may not be objectively reasonable, we are asking this to be reduced to second degree imperfect self-defense. So taking everything that Lindsay said, which is she pushed Merchant back when he appeared at the fight, and that she heard a gunshot, and that she identified Merchant as the person shooting the gun, that does not contradict anything that Merchant testified to. He admitted to shooting the gun. He admitted to being there. But Lindsay never testified to whether Hicks had a beer bottle. That testimony did not contradict Courtland's testimony. Does the beer bottle show up in the video according to the court? No. So the beer bottle was not in the video. The video was at a distance and grainy, difficult to discern. The court did state that it had to watch the video a few times to even see who was interacting in the video. So you can't see a beer bottle, but there is, I'm sorry. I just said, okay. Oh, okay. Yes. So taking all the evidence and the light most favorable to the state, including Lindsay's testimony and the firehouse bar footage, this court should find that Merchant had a sincere and genuine fear of Hicks, who was threatening himself and others with a beer bottle, even if that fear was not objectively reasonable. And I don't mean to cut you off. I know we're short on time. I think we're good on this issue. I think you wanted to get to the videos and I want to make sure you get to that. Thank you. Yes, I would. So moving on to the next argument. The trial court abused its discretion when it admitted 14 highly prejudicial Snapchat videos over the defense's several objections that the videos were irrelevant, cumulative, and highlighted other crimes evidence that was not properly introduced. So towards the end of the state's case, the state introduced these 14 Snapchat videos. The state claimed that they were introducing the Snapchat videos for the limited purpose of proving that Merchant used a gun on the night of the incident. However, the video showed almost anything but the gun. They showed him singing to rap music with explicit lyrics, presenting gang affiliated jewelry, making symbols suggested of gang affiliation with his hands, handling the gun in a negligent way around other people, including a child, using profanity, occupying a car with alcohol, holding stacks of cash in a suggestive manner, presenting the gun with a magazine attachment, and generally presenting himself in a way that will allow a person to make a negative assumption about you. Again, I come back to my point that this is a bench trial rather than a jury trial. I would tend to agree with you. If a jury saw this, we may be in a different discussion. But the trial court, the judge is assumed to follow the law, know the law, and to consider only relevant evidence. If my note here is correct, I think the judge did specifically say they were not considering the videos. Is my recollection correct? So at the finding, the judge did say that the videos were removed. However, at Merchant's post-trial motion, it stated that if the Snapchats were not relevant or after watching it, it just didn't help in the decision, that it didn't consider it. Meaning that the trial court did consider the Snapchat videos if they were relevant or helped with making a decision on whether Merchant was guilty. That is a departure from the earlier statement. If the trial court did think that the Snapchats were moot, then it would have just expressed that a second time when asked about it in the post-trial motion. However, the departure from stating originally that the Snapchats were moot suggests that the trial court in fact did rely on them. And the content of the especially considering the issue at hand, which is whether Merchant was acting in self-defense. The videos were egregious, and they included an incredible amount of cumulative, irrelevant, and other crimes evidence. So it would be very difficult for any person to ignore that. Even a judge who can make those credibility findings. I think that my time has expired. Unless the court has any more questions, I will reserve the rest of my time for rebuttal. And absolutely, you will have that. Before we move on, Justice Moore, Justice Schiller, do you have any questions? No questions. No questions. Thank you. All right. Thank you, counsel. Ms. Wells, go right ahead. Thank you, Your Honors. Counsel, may it please the court. I want to start with the standard of review as to the first issue, first degree murder versus second degree murder. There seems to be some confusion, at least on the defendant's part about that. The standard of review, to be clear, according to the Supreme Court of Illinois in the fact, could find that the mitigating factor did not exist. It is the defendant's burden to show the mitigating factor. And the Jeffries case, which is also a Supreme Court case, lists the six factors. The first five factors have to be proven by a preponderance of the evidence to establish second degree murder of imperfect self-defense. The state does not have to disprove anything. That was repeatedly referred to in the defendant's brief. The state's witnesses did not disprove, did not disprove, did not disprove. We're not talking about self-defense because the defendant conceded first degree murder and self-defense. That is not the argument in this case. Justice Bowie correctly pointed out that it is the trier effect that not only wastes credibility, draws reasonable inferences, and resolves conflicts in the evidence. So let's talk about the evidence in this case. We have the judges finding that Lindsey was credible. And counsel wants to say that Lindsey didn't go against what the defendant testified to. That is absolutely incorrect. She said that when she had her hand on the defendant's chest, the gun was fired right next to her ear. And she, therefore, was between the defendant and Mr. Hicks, the victim in this case. So the judge specifically found there was no confrontation between the victim and Hicks. He didn't believe the defendant's assertion on that point. The trial court concluded that defendant's testimony that he pushed the victim and the victim continued to move forward towards him did not happen. Courtland said he was moving away from the fight and that the beer bottle was on the ground. Contrary to the argument that Courtland said he was in fear of his life, his actual testimony was, I was afraid of being hit with the bottle, not afraid of dying. It would be unpleasant. That was what Courtland said. And that is on page 255 of the transcript. And to be clear, it was Vaughn that started the fight. So it was the defendant's buddy who started the fight. He couldn't have believed he was defending Vaughn who started the fight. So we have Lindsey testifying that there was no interaction. We have the trial court saying that the video corroborated her testimony, that Courtland moved away from the fight and goes back to it, that the victim moved away and was not moving towards anyone. These are the trial court's findings. And that is supported by the evidence. The defendant, like I said, does not contest first-degree murder. And it was Vaughn that was the initial aggressor. According to not only Lindsey and Newsom, but even the defendant, he said that Vaughn went over and was throwing haymakers. He knew Vaughn was the initial aggressor. That Courtland says the bottle was on the ground before he ever heard the shot, and that it was out of contention. It wasn't a danger to anyone. Defendant agrees Courtland had retreated. So he wasn't defending Courtland. In the closing arguments, however, despite defendant's testimony that he was only afraid of his own life, they said that he was protecting himself, and Courtland never asserted protecting Vaughn, as apparently is the argument here. I also want to point out that the defendant's conduct after the offense also shows consciousness of guilt. So we have his prior statement to the police, where he does not offer that he was even present, let alone that he fired the gun or was defending himself. Not only that, he hid the gun that had his fingerprint on it, the murder weapon. So the court also, and this is a significant finding test, the defendant testified that the person that came at him had dreads. The court noted that it was Mr. Newsom that had dreads, the victim did not have dreads, specifically referring to them as puffs or some other terminology that the court had. But the court found that the defendant's testimony on that was not correct. And so the court is not bound to believe the testimony of the defendant. We have five factors that the defendant has to prove by a preponderance of the evidence. First, that force is threatened against him. We have Courtland testifying the beer bottle is on the ground. We have the trial court finding there was no confrontation. And we have Lindsay testifying she had her hand down and the gun went off right next to her ear, it affected her hearing. That the person threatened is not the aggressor, since there was no threat. The defendant being the aggressor isn't really an issue here. The danger of harm was imminent. I want to remind the court that the beer bottle was on the ground, and that Courtland retreated and there was no confrontation. So with those three things, he didn't prove factor three by preponderance of the evidence, and that the threat and force was unlawful. As the court found, there was no threat and force, and that the defendant actually and subjectively believed the danger existed that required the use of his force. How can you believe something that didn't happen? You can't. So if there are no questions, I will leave argument one and I will just address the second argument that counsel said. I just want to make sure there are no questions first. Okay, so the stamp check videos, what was in them is really irrelevant when the court says, I am giving them and and I quote, no, wait, they were moved. He originally admitted them for a limited purpose, which was to show that the defendant possessed and had access to the murder weapon in the two months immediately preceding the offense. As the justices have noted, Howery and Naylor and Gilbert indicate the trial court only is presumed to know the law, follow it, and only consider admissible evidence. Once the defendant testified, yes, I was the shooter, the court said, videos are moved, I'm giving them no weight. Now, at the motion to reconsider, the court made some comment about if they were not helpful, I didn't consider them. Well, the court already found that they weren't helpful and he didn't consider them. I'm sorry, I do not recall if it's a he or she, so it could have been a female judge. Judge Knapp is female. The first name throws it off, I know that. Thank you for correcting me, I just couldn't remember that. So I want to distinguish Odin and Barnes, which counsel had cited in her brief to indicate the information was overwhelming. Those were jury trials and you don't have the same presumption that a jury knows and applies the law correctly. So those are very distinguishable. In addition, this was not a mini trial. There was one witness, there were seven minutes of video, and the court said, I'm giving it no weight. Therefore, we do not believe that that is an issue. I want to talk briefly about the trial judge misapprehending the sentence. The white court specifically says the court has to impose a sentence within the statutory range. The statutory range the judge cited, which is a 25-year mandatory minimum add-on, was correct, and defendant never asked for the court to find the sentencing range unconstitutional as applied to him. The trial judge can't be found to misapprehend the law by correctly stating the sentencing range. It's just not an argument that the trial judge should be held to that burden to sua sponte, find something unconstitutional, when they were specifically asked to impose the minimum add-on and did. If the court doesn't have any other questions, I see my time has expired. Justice Moore, Justice Schiller, do you have any questions? No. No other questions. I will say for the record, I finally was able to pull up the brief. I misstated when I said abuse of discretion as to the first issue, and counsel is exactly correct with that Blackwell case, so that one's on me. I apologize. No, it is something we actually had addressed thoroughly in our brief because there seems to be a contradiction between what the defense argued and what they said the standard review was. So, just wanted to focus on that. Thank you, Justice. Thank you, counsel. Ms. Clashberg, go right ahead with your rebuttal. Only a few things on the rebuttal. First, I do want to address the standard of review issue. So, at the trial court, the state maintained throughout the entire trial that they had to client guilty beyond a reasonable doubt. So, my client had the opportunity to prove by preponderance of the evidence that he was acting in self-defense, whether that be imperfect or not, but the state maintained that the responsibility to prove merchant guilty beyond a reasonable doubt, and that stayed with the state throughout the entire trial. I would also like to address what opposing counsel stated about Mr. Courtland's testimony. We can refer to the same page in the record 255. Opposing counsel said that he was not in fear of his life, and he did not testify to that. However, if you go to page 255, they ask, were you afraid of being hit in the head with a beer bottle? Yes. Okay. Were you afraid of your life? Yes. So, he was, in fact, in fear of his life. That was not misstated. The opposing counsel also wanted to differentiate between the dreads and the twists and whether my client correctly identified Mr. Hicks as having either or. That has no bearing on whether my client had a genuine fear for his life, whether Mr. Hicks had dreads or twists. It was dark. It was late at night. We all know the circumstances surrounding this, so that is inconsequential. Lastly, opposing counsel stated that what was in the Snapchats were irrelevant because the court had stated that they were moot, but the Snapchats were 14 Snapchats, totaling just under eight minutes, and hardly any of them were of the gun. The state does have a responsibility to limit what is going to be in those Snapchats to relevant information to prove what they're trying to prove, which was that my client was in possession of a gun. And there was a considerable amount of irrelevant content, and although Odin was a trial, the state still maintains the responsibility to limit irrelevant content that goes before the court, regardless of if it's a bench trial or a jury trial. And with that, we ask that you find in of Mr. Merchant. Thank you. If the judge says he's giving it no weight, how is that prejudicial? Well, the judge initially said he wasn't giving it weight, but then he did state at the post-trial motion that he would give it weight if it was helpful in making his decision. The only reason that he would say that is if there was a departure from the original statement that the Snapchats were moot. So, the difference in statement suggests that they were considered to some extent. To what extent, we don't know, but any consideration of the Snapchats was error. If there are no further questions, we ask that you... I'm sorry, go right ahead. No, no, no, that's okay. If there are no further questions, we ask that you find in favor of Mr. Merchant. Justice Moore, Justice Scholar, any final questions? No other questions. No questions, thank you. Well, counsel, thank you for your arguments today. We will take the matter under advisement. We will issue an order in due course.